**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0174-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TYRIE R. BULLOCK,

     Defendant-Appellant.

_____

Submitted May 27, 2026 – Decided July 23, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-09-2609.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Howard W. Bailey, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Margaret Myaskovskaya, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tyrie R. Bullock appeals the August 27, 2024, Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He contends that his trial counsel rendered ineffective assistance. After reviewing the record in light of the governing legal principles, we affirm.

I.

We presume the parties are familiar with the pertinent facts and procedural history, which are set forth in our prior opinion deciding defendant's direct appeal, State v. Bullock, No. A-0537-19 (App. Div. June 21, 2022). It is sufficient for present purposes to note that this case arises from a June 2017 homicide committed in the course of a robbery. The shooting was captured on surveillance video. Defendant's cousin, Nakia Cribb, observed the incident and later identified defendant as the shooter. She was not the only eyewitness who identified defendant.

Defendant filed several pretrial motions, including a Miranda[1] motion and a Wade/Henderson[2] motion to suppress out of court eyewitness identifications

___

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011).

A-0174-24

made by Cribb and William Jimenez-Dominguez, the victim's brother. Of relevance to the matter before us, on August 7, 2018, and December 19, 2018, the trial court conducted a Wade hearing after which it denied the motion to suppress the eyewitness identification testimony.

Defendant pled guilty pursuant to a negotiated agreement to a reduced charge of aggravated manslaughter, and we affirmed the conviction on direct appeal. See Bullock, slip op. at 3.

Thereafter, defendant filed the present PCR petition. He raised the following contentions in his self-represented and counseled briefs: (1) trial counsel provided ineffective assistance by failing to investigate and present Cribb's motive to falsely accuse defendant; (2) counsel provided ineffective assistance by failing to request documentation related to Cribb's drug abuse; (3) counsel provided ineffective assistance by failing to impeach Cribb and Jimenez-Dominguez through direct or cross-examination at the Wade hearing; (4) trial counsel provided ineffective assistance by failing to file a motion to suppress defendant's gang affiliation; (5) defendant received ineffective assistance because counsel failed to suppress additional eyewitness testimony; (6) trial counsel provided ineffective assistance by failing to challenge the grand

A-0174-24

jury indictment; and (7) trial counsel prejudiced defendant by failing to plan for her medical leave.

In support of his PCR petition, defendant included an affidavit from his mother, Tuwana Liles, who stated that she had been caring for Cribb's daughter and had reported Cribb to the Division of Child Protection and Permanency (DCPP)[3] for visiting with her daughter while under the influence of drugs and bringing an unknown male guest. Liles eventually adopted Cribb's daughter and alleges that Cribb "told various family members that she would get me back for stealing her daughter." Defendant suggests that this led Cribb to falsely testify against him.

The PCR court heard oral arguments on June 14, 2024, and in a written decision dated August 27, 2024, denied defendant's PCR petition without an evidentiary hearing.

Addressing the failure to investigate Cribb's bias, the PCR court held that while the information supported further weakness in Cribb's identification, it did not affect admissibility, only credibility. The court found that Cribb's alleged

---

[3] In the affidavit, Liles stated that she reported Cribb to the Division of Youth and Family Services, the agency's name before it became DCPP in 2012.

bias did not impact suggestibility or third-party influence and did not change the fact that the identification was corroborated by surveillance video.

With respect to defendant's second contention—that counsel was ineffective for failing to request documentation related to Cribb's drug abuse—the PCR court found that Cribb's drug use was known to the court and was factored into its analysis at the Wade hearing.

Turning to defendant's third argument—that counsel was ineffective for failing to impeach Cribb and Jimenez-Dominguez through direct or cross-examination at the Wade hearing—the court concluded that defendant provided no support for this argument and did not identify what information should have been revealed and how that information would have impacted the court's ruling at the Wade hearing.

Regarding defendant's claim that trial counsel was ineffective for failing to move to suppress evidence of his gang affiliation, the PCR court relied on its prior Miranda ruling that N.J.R.E. 404(b) did not apply because defendant referenced the affiliation to mislead detectives as to why he would not be in the area at the time of the shooting. The PCR court then referred to its October 2, 2018, ruling on the N.J.R.E. 403 analysis, concluding that the statement would be admissible with a curative instruction. The instruction would have told jurors

5

that they could not consider whether defendant was affiliated with a gang; rather, the statement is "simply brought by the State to show that the [d]efendant has used that as a tactic to throw of[f] the detectives." The PCR court thus concluded that defendant's PCR argument lacked merit considering its previous rulings on this issue.

Turning to defendant's fifth argument—that he received ineffective assistance of counsel because counsel failed to suppress additional eyewitness testimony—the PCR court rejected this argument because defendant failed to identify which eyewitness testimonies should be suppressed or the basis for their suppression.

Next, the PCR court dismissed defendant's sixth contention that trial counsel was ineffective for failing to challenge the grand jury indictment. The court concluded that defendant presented no evidence in support of this argument.

Finally, the PCR court addressed defendant's argument that trial counsel failed to plan for her medical leave in a way that protected his trial rights. Specifically, defendant argued that counsel failed to recruit co-counsel or work with the prosecutor to schedule the trial after her medical leave, despite knowing that she would be absent. Thus, defendant argued, he declined to proceed to

trial with an attorney not familiar with his case. The PCR court found that this assertion was belied by the record, which showed that trial counsel relayed to the court more than once that defendant was seeking additional time to consider whether to proceed to trial or accept the State's plea offer. The PCR court found that trial counsel gave defendant ample time to consider whether to proceed to trial and was fully prepared to take the case to trial. The PCR court also noted that the plea hearing further supported that defendant "was not rushed to accept the plea," having admitted that he understood his right to plead not guilty and was satisfied with his representation.

The PCR court thus concluded that defendant failed to establish the first prong of the Strickland/Fritz[4] test—that his attorney's performance did not meet an "objective standard of reasonableness." The court found that an analysis of the second prong—existence of a "reasonable probability that, but for counsel's errors, [defendant] would not have pleaded guilty and would have insisted on going to trial"—was not required because defendant failed to meet the first prong. The court further found that an evidentiary hearing was not necessary because defendant did not establish a prima facie claim requiring a hearing.

---

[4] Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987).

A-0174-24

This appeal follows. Defendant raises the following contentions for our consideration:

> THE [PCR] COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR [PCR] WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HE RECEIVED INADEQUATE LEGAL REPRESENTATION FROM TRIAL COUNSEL WHO FAILED TO INVESTIGATE AND DEVELOP AVAILABLE WITNESSES TO ESTABLISH THE BIAS AND ANIMOSITY OF MS. [CRIBB].
>
> A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR [PCR].

II.

We begin our analysis by acknowledging the legal principles governing PCR petitions, starting with the scope and standard of review. We review a PCR court's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004). Appellate review "of a PCR court's factual findings is 'necessarily deferential'" State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (quoting State v. Nash, 212 N.J. 518, 540 (2013)), subject to an important caveat. When as in this case the PCR court does not hold an evidentiary hearing, we review both the factual inferences drawn from the record and any legal conclusions de novo. State v. Balbosa, 481 N.J. Super. 497, 519 (App. Div. 2025). See also Nash, 212 N.J. at

540-41; State v. Aburoumi, 464 N.J. Super. 326, 338 (App. Div. 2020).

Furthermore, when applying de novo review, appellate courts "view the facts in the light most favorable to the defendant." State v. Jones, 219 N.J. 298, 311 (2014).

There is support in the case law for the proposition that appellate courts review a PCR court's decision on whether to proceed without an evidentiary hearing for an abuse of discretion. See Balbosa, 481 N.J. Super. at 519-20 (citing State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023)).[5] However, given uncertainty as to the appropriate standard of review of a PCR court's decision on whether to hold an evidentiary hearing, we err on the side of caution

---

[5] Applying an abuse-of-discretion standard to a PCR court's decision to deny a PCR petitioner's request for an evidentiary hearing appears to be in tension with the long-settled rule that we review de novo not only a trial court's interpretation of the law but also the legal "consequences that flow from established facts." See State v. Gamble, 218 N.J. 412, 425 (2014). Cf. Balbosa, 481 N.J. Super. at 519 (stating that "we review both the factual inferences drawn from the record and any legal conclusions de novo" and that "[w]e review the PCR court's decision to proceed without an evidentiary hearing for an abuse of discretion."). Arguably, the question of whether a defendant has established a prima facie case in support of PCR—a critical inquiry in determining whether an evidentiary hearing is required—is a question of law, or at least a mixed question, that is, a legal consequence that flows from established facts. See R. 3:22–10(b); see also State v. Preciose, 129 N.J. 451, 462 (1992) (PCR courts "ordinarily should grant evidentiary hearings . . . if a defendant has presented a prima facie [case] in support of post-conviction relief.").

and review de novo whether defendant in this case has established the grounds for an evidentiary hearing.

Turning to substantive legal principles, PCR serves the same function as a federal writ of habeas corpus. Preciose, 129 N.J. at 459. PCR provides "a built-in 'safeguard that ensures that a defendant was not unjustly convicted.'" Nash, 212 N.J. at 540 (quoting State v. McQuaid, 147 N.J. 464, 482 (1997)). When petitioning for PCR, a petitioner must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Id. at 541. To meet this burden, the petitioner must allege and articulate specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

A defendant alleging ineffective assistance of counsel must satisfy both prongs of the two-part test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and adopted by the New Jersey Court in State v. Fritz, 105 N.J. 42 (1987). "First, the defendant must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Second, the defendant must show that counsel's "deficient performance prejudiced the defense." Ibid.

A-0174-24

To meet the first prong of the Strickland/Fritz test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid. Counsel's performance is held to a standard of "reasonableness under prevailing professional norms." Id. at 688. Stated another way, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Ibid.; see also State v. Marshall, 148 N.J. 89, 156-57 (1997).

The second Strickland prong requires that the petitioner show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different if counsel had not made the errors. Id. at 694. Our Supreme Court emphasized in State v. Gideon that the second prong sets forth "an exacting standard." 244 N.J. 538, 551 (2021) (quoting State v. Allegro, 193 N.J. 352, 367 (2008)). "Prejudice is not to be presumed;" rather, "[t]he defendant must 'affirmatively prove prejudice.'" Ibid. (quoting Strickland, 466 U.S. at 693). Further, to set aside a guilty plea based on ineffective assistance of counsel, a PCR petitioner must demonstrate "a reasonable probability that, but for counsel's errors, [they] would not have pled guilty and would have insisted

11

on going to trial." State v. Nunez-Valdez, 200 N.J. 129, 139 (2009) (quoting State v DiFrisco, 137 N.J. 434, 457 (1994)).

Short of establishing entitlement to a new trial or to vacate a guilty plea, a PCR petitioner may demonstrate that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462-63. As a general matter, a defendant's claim of ineffective assistance of counsel "is more likely to require an evidentiary hearing because the facts often lie outside the trial record and because the attorney's testimony may be required." Id. at 462. However, a PCR petitioner is not automatically entitled to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(b) provides in pertinent part,

> [a] defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

With respect to the first of these three requirements, "[a] prima facie case is established when a defendant demonstrates 'a reasonable likelihood that [their] claim, viewing the facts alleged in the light most favorable to the

defendant, will ultimately succeed on the merits.'" State v. Porter, 216 N.J. 343, 355 (2013) (quoting R. 3:22-10(b)).

## III.

Applying the foregoing legal principles to the present facts, we conclude that defendant has failed to establish either prong of the Strickland/Fritz test. We note the PCR court was familiar with the record, having presided over the pre-trial hearings, plea hearing, and sentencing. Applying de novo review, we conclude the PCR court properly denied defendant's requested relief without an evidentiary hearing because defendant failed to meet the first Strickland prong demonstrating that counsel's performance fell below an objective standard of reasonableness. See 466 U.S. at 688.

The law is well settled that "[i]n representing a criminal defendant, defense counsel has a 'duty to make reasonable investigations.'" State v. Knight, 256 N.J. 404, 418 (2024) (quoting State v. Chew, 179 N.J. 186, 217 (2004)). "The right to a 'thorough defense investigation is also part of the right to counsel.'" Ibid. (quoting State v. Martinez, 461 N.J. Super. 249, 276-77 (App. Div. 2019)). However, courts cannot fault counsel "for failing to expend time or resources analyzing events about which they were never alerted." State v. DiFrisco, 174 N.J. 195, 228 (2002).

Here, the record shows that defendant did not inform his trial counsel about the animosity between Cribb and his mother—as established by the following colloquy between the PCR court and defendant's attorney at PCR oral argument:

> THE COURT: All right. All right, so let me ask this question. Is it [the] defense['s] position that [trial counsel] knew of . . . this alleged animosity between [Cribb] and defendant's mother?
>
> [PCR COUNSEL]: She didn't know (indiscernible).
>
> . . . .
>
> [S]he never, um, took the opportunity to really discuss the matter enough to discover there. Whereas . . . in the development of this case, I learned this . . . in the first legal call that I had with my client. And asking him about the . . . situation.
>
> THE COURT: So she did not know.
>
> [PCR COUNSEL]: Correct.
>
> THE COURT: Okay. And how was she supposed to know?
>
> [PCR COUNSEL]: Um, in doing interviews with the client. Going over the case . . . and preparing for the [Henderson] motion . . . and maintaining sufficient communication with the client.
>
> THE COURT: So she did so in preparing the case . . . the cross-examination of . . . both witnesses were

14

extensive. So that would leave me to believe logically that she went over the case with the defendant. In going over the case with the defendant, the defendant never thought of saying, by the way, this key witness has a beef with my mother. We learned that the key witness had some vision impairment.

[PCR COUNSEL]: Mm-hm.

THE COURT: We learned the key witness had substance abuse and other things. So this is something that your client did not bring to the attention of . . . his trial attorney?

[PCR COUNSEL]: I . . . suppose not. Not during the preparation of the case.

This exchange demonstrates that defendant failed to inform his trial counsel of Cribb's bias against him. Trial counsel cannot be deemed ineffective for failing to investigate something that she was never alerted to. See DiFrisco, 174 N.J. at 228. See also Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. . . . [W]hat investigation decisions are reasonable depends critically on such information.").

Furthermore, defense counsel thoroughly cross-examined Cribb at the Wade hearing, exposing her poor eyesight, including her inability to see out of

15

one eye. Defense counsel also elicited testimony from Cribb during cross-examination that she was under the influence of drugs at the time she made the identification. This information was considered by the trial court in its decision that the identification was ultimately admissible as confirmatory.

Following the court's finding that Cribb's identification was admissible, defense counsel relayed to the court that she was considering pursuing expert testimony, stating,

> I think given Your Honor's ruling concerning [Cribb], I do want to speak with my office about the possibility of retaining an identification expert specifically concerning familiarity in identification if this goes to trial.

Had this case proceeded to trial, defense counsel was prepared to retain an expert to challenge the validity of the identification.

In sum, defense counsel diligently challenged Cribb's identification through extensive cross-examination and was prepared to use expert testimony to further undermine the identification. Accordingly, defendant cannot meet his burden of demonstrating that counsel's performance fell below an objective standard of reasonableness. See Strickland, 466 U.S. at 688.

Even assuming for the sake of argument that trial counsel's performance fell below an objective standard of reasonableness, defendant fails to satisfy the

16

second Strickland prong demonstrating that he was prejudiced by the deficient performance. 466 U.S. at 687. Specifically, defendant argues that trial counsel failed to investigate the familial relationships that would have revealed the bias and animosity that allegedly motivated the identification. However, defendant fails to identify how further revealing Cribb's bias would have altered the trial court's determination that the identification was admissible as confirmatory.

Our Supreme Court has instructed that confirmatory identifications are "not considered suggestive." State v. Pressley, 232 N.J. 587, 592 (2018). As the Court explained, "[p]olice will, on occasion, display a single photograph to a witness in an effort to confirm the identity of a perpetrator. Police typically limit this method to situations in which the perpetrator is previously known to or acquainted with the witness." Id. at 593 (quoting National Research Council, Identifying the Culprit: Assessing Eyewitness Identification 28 (2014)). "[R]eliability is the linchpin in determining the admissibility of identification testimony." Henderson, 208 N.J. at 238 (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). "[I]f after weighing the evidence presented [at a Wade hearing] a court finds from the totality of the circumstances that defendant has demonstrated a very substantial likelihood of irreparable misidentification, the court should suppress the identification evidence." Id. at 289.

17

In its oral decision following the December 2018 <u>Wade</u>/<u>Henderson</u> hearing, the trial court acknowledged Cribb's bias, stating,

> [a]nd we do know from her testimony that she has a certain amount of bias against [defendant's] mother because [defendant's] mother raised her children. . . . I think it kind of came out in her tone. There's a bit of hostility there because of that. So she has a motive to . . . do something that would hurt, either directly or indirectly, [defendant's mother's] family.

However, the trial court ultimately concluded that the identification was admissible because there was not a substantial likelihood of irreparable misidentification considering that Cribb testified that she has known defendant "all of his life" and has "seen him every day for years." The trial court further found that Cribb's bias, as well as her drug use and vision issues, were relevant to her credibility and should be revealed to the jury at trial but did not speak to the admissibility of the confirmatory identification.

In this appeal, defendant fails to demonstrate how further investigation of Cribb's animosity towards him would have altered the trial court's decision that the identification was confirmatory, particularly considering that the trial court acknowledged Cribb's bias in its oral decision. As the PCR court correctly noted, additional testimony or evidence of Cribb's motivations for identifying defendant would be relevant to her credibility, but not to the admissibility of the

18

identification. Moreover, defendant fails to identify how the absence of such information prejudiced his defense in light of our conclusion on direct appeal that "despite her drug use and vision problems, Cribb's account of the robbery-homicide encounter was entirely accurate." Bullock, slip op. at 19. Thus, defendant cannot satisfy the second Strickland prong demonstrating that he was prejudiced by counsel's deficient performance. 466 U.S. at 687.

We add that defendant has not established a reasonable probability that if he had somehow prevailed in suppressing the identification testimony, he would have declined the plea offer tendered to him and proceeded to trial. See Nunez-Valdez, 200 N.J. at 139. Defendant's plea offer was favorable, allowing him to avoid the thirty-years-to-life mandatory sentence he was facing on the knowing/purposeful murder charge that was downgraded pursuant to the plea agreement.

In these circumstances, we conclude that defendant has not established the grounds for an evidentiary hearing, much less to vacate his guilty plea.

To the extent we have not specifically addressed them, any remaining contentions raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0174-24